Christian, J.
delivered the opinion of the court.
This is an appeal from a decree of the Circuit court of Pittsylvania county.
*137 The transcript of the record shows the following case :
At the November term of said court, in the year 1867, a judgment was recovered against J. J. and C. C. Tinsley, late merchants, trading under the firm and style of J. J. and G. C. Tinsley, and J. J. Tinsley and C. C. Tinsley and J. H. Trotter, surviving partners, of themselves and Joseph D. Dabbs, late merchants and partners, trading under the firm of Tinsley, Trotter & Co., for the sum of $485, with six per cent. interest thereon, from the 22d day of June 1861.
This judgment was founded on a note signed by J. J. and C. C. Tinsley, and Tinsley, Trotter & Co., payable to N. S. E. Dullas, who intermarried with the appellant Holland.
In June 1868, Joseph H. Trotter filed his bill in the Circuit court of Pittsylvania county, against Holland and wife, the two Tinsleys and A. GL Dullas, who was the guardian of Mrs. Holland before her marriage, in which bill he seeks to enjoin the judgment at law.
In this bill the only ground on which he seeks this injunction against the judgment, is that the debt was a debt of the firm of J. J. and C. C. Tinsley, and that J. J. Tinsley, who was the acting and managing partner of the firm of Tinsley, Trotter & Co., had signed the name of that firm, as security on the note, without authority. In this bill he gives no excuse whatever for his failure to defend the action at law.
Holland and wife answered this bill, and insisted that J. J. Tinsley, as the acting manager of both firms, had authority to sign the note for Tinsley, Trotter & Co.; and insisted further, that the plaintiff' was entitled to no relief in a court of equity, because he had made no defence in the action at law, and had alleged no excuse for failing to make his defence at law to the action upon the note.
In May 1869, the plaintiff', Trotter, filed, by leave of the court, his amended bill, in which he alleges, in ad *138 dition to the matters set forth in his original bill, that he was prevented from making his defence to the action at law in consequence of certain representations and assurances made and given by the plaintiff’s attorney in the action at law; and in consequence of the promises and representations so made, he was led to believe, and did believe, that it was unnecessary for him to take any further steps to defend said suit.
This amended bill was answered by Holland and wife (the appellants), who deny the allegations of the amended bill, and call for proof of the same. Depositions were-taken to sustain the allegations both of the original and amended bills ; and the case came on to be heard at the November term, 1869, upon the bill and answers and examination of witnesses, when the court, being of opinion that the plaintiff (Trotter) was entitled to the relief prayed for, entered its decree perpetuating the injunction, declaring that the defendants, Holland and wife, and those claiming under them, should be for ever enjoined and restrained from taking any steps to compel the collection of the judgment against Trotter in the-bill and proceedings mentioned.
Prom this decree an appeal was allowed by this court. The following errors are assigned by the appellant in his petition of appeal, and insisted upon in the argument of his counsel here :
1st, J. J. Tinsley, having been the acting manager of both firms, and using the names of each firm for the benefit of the other, the acquiescence of Trotter is to be-inferred in the use of the name upon the note in this case.
2nd, It was error to permit the plaintiff to amend hie bill, to introduce facts within his knowledge at the time the original bill was filed, and especially without the payment of costs; the defendants, Holland and wife, having previously filed their answers.
3rd, The facts stated sas excuse for not defending the *139 suit at law are not sustained by the evidence; and neither the bill nor the evidence makes out a sufficient excuse for not making this defence at law.
4th, It was error to decree costs against the defendants, Holland and wife, who had recovered a judgment at law.
As to the first assignment of error, it is sufficient to observe that the proof is clear and distinct upon the concurrent testimony of all the witnesses in the cause, including J. J. Tinsley himself, that the said Tinsley signed the note in controversy with the name of the firm of Tinsley, Trotter & Co., without any authority whatever. And it is manifest that, if the evidence in the record had been heard in the action at law, there must have been a judgment in favor of the defendant Trotter.
As to the second assignment of error, it is the well settled practice of courts of equity, that where the plaintiff is advised that his original bill does not contain such, material facts, or make such parties as may be necessary to enable the court to do complete justice, he may amend his bill by inserting new matter, or adding new parties. 1 Dan. Ch. Pr. new edition, 401-2, and notes.
As a general rule, the court will, at any time before the hearing, grant leave to amend where the bill is defective as to parties, or in the mistake or omission of' any fact or circumstance connected with the substance of the bill, or not repugnant thereto. This amendment may be made by common order, before answer or demurrer, and afterwards by leave of the court. 1 Dan. Ch. Pr. 407-8. See also, Mason v. Nelson, 11 Leigh, 227; Parrill v. McKinley, 9 Gratt. 1; Stephenson v. Taverners, 9 Gratt. 398; Id. 372; Smith v. Smith, 4 Rand. 95; Boykin's Devisees v. Smith, 3 Munf. 102.
In the case before us no objection was taken by the defendants in the court below to filing the amended bill, and it was filed, by leave of the court, before the; *140 hearing. The new matter alleged in the amended bill was in no wise repugnant to the original bill, but was in addition thereto, and connected with the allegations of the original bill, and naturally grew out of the substance of that bill, and is fairly within the rule of Chancery courts governing this question. Such an objection ought not to be sustained, except in a clear case, especially where the objection is made for the first time in the appellate court. If sustained, it would be no bar to another injunction. It would not conclude the rights of the parties, or adjudicate the matters in controversy between them. It is the policy of courts of equity not to multiply, but to put an end to litigation. Where the record shews the proper parties and the substantial case, no court, and least of all an appellate court, will render such a decision as to leave the matter in controversy still a subject of litigation. We are, therefore, of opinion, that the second assignment of error is not well taken.
The third assignment of errors presents a question of more difficulty, and requires more careful and extended examination. It is insisted by the learned counsel for the appellants, that the facts stated as excuse for not defending the suit at law are not sustained by the evidence, and that neither the bill nor the evidence makes out a sufficient excuse for not making this defence at law.
Numerous decisions of this court were cited by the learned counsel for the appellants to sustain these positions. Without noticing these cases in detail, it will be sufficient to extract from them the general principles settled by them.
The grounds upon which a court of equity will interfere to grant relief against a judgment at law, are well defined and firmly established.
That a court of chancery will not entertain a party seeking relief against a judgment which has been rendered against him in a court of law, in consequence of *141 his default upon grounds which might have been successfully taken in the court of law, unless some reason founded in fraud, accident, surprise, or some adventitious circumstances beyond the control of the party, be shown, why the defence was not made in that court, is a proposition which has been so repeatedly affirmed, that it has become a principle and maxim of equity, as well settled as any other whatever. It has been acted upon and recognized in very numerous cases in this court, as well of ancient as of recent date, so numerous are they, and so familiar, that it is deemed entirely unnecessary to cite them here.
This rule has its foundation in wisdom and sound policy. It springs out of the positive necessity for prescribing some period at which litigation must cease. A court of equity will not grant relief merely because injustice has been done. To entitle himself to relief, the party must show that he has been guilty of no laches, but that he has done every thing that could reasonably be required of him to render his defence effectual at law. A court of equity will never, whatever the hardship, relieve a party from the consequences of their own negligence, and inexcusable laches. To do so, would be to hold out direct encouragement to such conduct. Diligence and vigilance would cease to be the rule, and we should destroy all certainty in the results of judicial proceedings. The cases in which courts of equity have refused relief, have been cases where the failure to make defence in a court of law has resulted from the laches or negligence of the party setting up his demands in a court of equity.
They have always granted relief, however, when it is shown that the reason why the defence was not made, was founded in fraud, accident, surprise, or some adventitious circumstance beyond the control of, the party. Mason v. Nelson, 11 Leigh 227; Mosby v. Haskins, 4 Hen. & Mun. 427 ; 2 Hen. & Mun. 10. Applying these *142 well settled principles to the case before us, we are constrained to say, that this case is not within the rule of the decisions relied upon by the learned counsel for the appellant. We think it must be conceded, that if the facts stated in the amended bill be true, the appellee, Trotter, was not guilty of any negligence, or want of diligence, in failing to make his defence in the action at law, and that he is entitled to the relief prayed for. So far from being negligent in protecting his interest, he alleges that immediately after receiving the summons he spoke to William M. Treadway, Jr., of the firm of Treadway & Son, (who had been his regular counsel for years) to defend the suit, and stated to him the grounds of his defence; that Treadway then informed him that his firm had brought the suit for Holland and wife, but that he was so well satisfied of the truth and justice of ■his defence, that he would take no judgment against him; and that when he, Trotter, said that he would employ other counsel, Treadway assured him it was entirely unnecessary, as that he would see no judgment should be entered against him. That in consequence of these promises and representations, made to him by the attorney for the plaintiff, he was induced to believe, and did believe, that it would be unnecessary for him to defend the suit; that he was not aware of the existence of said .judgment until some time after its rendition, and when •apprised of the fact, was completely suiprised, and soon afterwards applied to counsel to file his bill for an injunction. If these allegations are sustained by the proof, it is a clear case for relief in a court of equity. It was manifestly a case of complete surprise. Trotter having a valid and substantial defence, immediately upon the bringing of the suit applied to counsel who had ^usually represented him. He, however, happened to be the plaintiff’s counsel, and of course, could not defend the suit for Trotter; but gave him the assurance that he would take no judgment against him. Treadway being *143 the agent and attorney of Holland and wife, had the undoubted right, if in his discretion he thought fit to do so, to release one of the defendants to that action, and take judgment against the others ; and Trotter had the same right to rely upon the assurance given by Treadway, as if it had been given by Holland and wife. After receiving such assurance, it surely cannot be said that he was guilty of inexcusable laches because he did not defend the suit.
The allegations of the amended bill are substantially, if not literally, sustained by the evidence of Treadway. He said in his deposition, “I am not sure there was a conversation between us on the subject; but if there was not, I received a letter from Trotter about the case shortly after the suit was brought; either there, in his conversation, or in his letter, he stated his defence, and I informed him that I considered it a good one, and that if pleaded, I would not contend for a judgment against him, believing that I could not successfully contest the defence, and that a judgment against him under such a defence would be unjust and improper. Trotter asked, or wrote me, to attend to his interest if I could; I replied, either in person or by letter, that I could not represent him, but promised that I would •state the grounds of his defence to Messrs. G. H. and J. Gilmer, or some other attorney, and get them to represent him. This he authorized me to do. From some cause not now remembered, I failed to mention the matter to other counsel, and it escaped my attention. I heard no more of it, and my attention was not called to it until judgment had been entered by default against Trotter, along with the other defendants. I have no doubt that a pressure of business and forgetfulness on my part was the only reason why I failed to mention the defence to other counsel to represent Trotter.”
A letter is also filed with this deposition, and was read in connection with it by consent, from the said *144 William M. Treadway, Jr., in which he says: “I examined the office to ascertain how the judgments were entered up in the Holland and Thornton cases. To my surprise, that of Holland is entered against each member of the firm, the other not so. This must have occurred from inadvertence on the part of the clerk in his entries, as no judgment was asked for except against the Tinsleys in that case. I think I can have it set right, and will certainly make an effort to do so.”
It is to be observed that in his deposition Treadway • does not say that he agreed that there should be no judgment against Trotter; but it is manifest that he did give him such assurance, for in the letter filed with his deposition, which was written shortly after the transaction, and when the facts were fresh in his recollection, he says: “To my surprise, that (the judgment) of Holland is entered against each member of the firm. This must have occurred from inadvertence on the part of the clerk in his entries, as no judgment was asked for except against the Tinsleys in that case. This evidence sustains the allegation of the plaintiff’s bill, and makes out a clear case for the equitable interference of a court of chancery. It was manifestly a case of complete surprise; and the appellee, Trotter, having been misled and prevented from making his defence, which would unquestionably have defeated the plaintiffs’ demand in the action at law, by the representations and assurances of the plaintiffs’ agent and attorney, it would be a fraud upon him, and the grossest injustice, if that judgment should now be enforced against him. The case of Hill v. Bowyer, 18 Gratt. 364, confidently relied upon by the counsel for the appellant, is not at all similar to this case. It is true the allegation of the bill in that case was that Hill had written to an attorney to defend his interest in that suit, and that, through some misapprehension, the case went undefended as to Hill; but Judge Joynes, in his opinion in that case, lays stress *145 upon the fact that the deposition of the attorney was not taken, nor the letter produced. ITor in that case was there any proof of the allegations of the bill in this respect.
And, indeed, in all the cases relied upon by the counsel for the appellant, it will be found that the parties seeking relief were either guilty of inexcusable laches, or at least of a want of that diligence and vigilance required by courts of equity of all those who seek its aid. Ho such laches,or want of diligence, can be imputed to the appellee in this case; and the court below was not in error in perpetually enjoining a judgment which at the time was a surprise, ándito be enforced now would amount to a fraud.
Decree affirmed.