98   323
99   467

98    323
108   586

# Wytheville.

## THOMAS v. JONES.

### JUNE 14, 1900.

1. TAX TITLES—*Defences—How Cut Off.*—In the case of tax titles acquired under section 666 of the Code,' it is not the lapse of two years which cuts off the former owner from inquiring into the various steps by which his title has been divested, but that effect, according to the terms of the statute, is only produced by the execution of the deed by the clerk, and its recordation.

2. TAX TITLES—*Defences—Deed Obtained by Fraud or Surprise—Case in Judgment.*—If the grantee of the Commonwealth of a tax title under section 666 of the Code obtained the order for the deed under such circumstances as that a court of equity would relieve against it, and at that time the former owner had the right to redeem from the Commonwealth, a court of equity would grant relief to such owner, and permit him to redeem, notwithstanding the execution and recordation of a deed to the purchaser. In the case in judgment, the former owner had the right of redemption in consequence of the failure of the officers of the State to comply with the provisions of section 637 of the Code, and the order for the deed was obtained under such circumstances as entitles the former owner to relief.

3. CHANCERY PLEADING AND PRACTICE—*Judgments—Relief in Equity.*—Courts of equity grant relief against judgments at law obtained by fraud, accident, surprise, or some adventitious circumstance beyond the control of the party; and it is immaterial that an act was done in good faith and without fraudulent intent, if by it an advantage has been obtained which it is against good conscience to enjoy.

Appeal from a decree of the Circuit Court of Culpeper county, pronounced November 2, 1898, in a suit in chancery,

NOTE BY THE REPORTER.—Judge Riely was not present when this opinion was delivered, but was present at the argument, participated in the conference, and concurred in the opinion after it was prepared.

wherein the appellee was the complainant, and the appellant was the defendant.

*Affirmed.*

The opinion states the case.

.*Grimsley & Miller,* *H. W. Sutherland,* and *H. G. Peters,* for the appellant.

.*Barbour & Rixey* and *G. D. Gray,* for the appellee.

KEITH, P., delivered the opinion of the court.

A tract of land owned by G. Wallis Jones in the county of Culpeper was sold for non-payment of taxes, and purchased by the State on the 17th of December, 1894. Two years having elapsed, one John D. Thomas filed an application and purchased it from the State, and on the 30th of April, 1897, the clerk of the County Court of Culpeper executed a deed to him. On the third Monday in May, 1897, Jones filed a bill in the Circuit Court of Culpeper county, in which he states that this deed is invalid and void for a number of causes, which he proceeds to set out with much detail, and prays that it may be cancelled and his title quieted, and freed from the cloud resting upon it by rea- son of the deed. Thomas answered this bill, denying all of its material averments, but we do not find it necessary to state the pleadings more precisely, nor to discuss the evidence adduced save in one particular, which will be presently adverted to, as the facts agreed are in other respects sufficient to enable us to decide the case upon its merits.

" It is agreed that the land books filed in the clerk's office of Culpeper county, and in the treasurer's office, for the year 1893, were not sworn to by T. O. Yowell, the commissioner of the revenue, and were not examined and certified to by the clerk of the County Court for Culpeper county, as required by law, and

Opinion.

that these books, as well as the original lists in the clerk's office, may be used as a part of the evidence in this cause.

" That the delinquent list for 1893 was not made off until October 12, 1894.

" That the clerk of the County Court of Culpeper county did not, within sixty days after the lists of delinquent lands for 1893 were allowed, under section 608, lay a certified copy thereof, or any copy thereof, before the Board of Supervisors of Culpeper county, as required by section 612. Nor did the Board of Supervisors cause said lists, or any part thereof, to be published in any of the modes prescribed by section 612, and the order of October 12, 1894, is the only action taken by said board relative to said lists.

" That the clerk of the County Court did not furnish to the county treasurer a certified copy of said lists, as corrected by the court, nor did he cause a copy thereof to be posted at the front door of the court-house, nor did he cause printed copies thereof to be posted at least five public places in Cedar Mountain District, in Culpeper county, as required by section 637, the only publication being that, as shown by plaintiff's 'Exhibit E,' taken from the Culpeper *Enterprise.*

" That, at the time John D. Thomas filed his application to purchase, he paid no money to the clerk of culpeper county, and did not tender him any, and did not pay any until April 30, 1897.

" The above facts are admitted without prejudice to the defendant, and without waiving rights to insist that they cannot be inquired into in this proceeding.

" The plaintiff admits that the only tender of taxes for 1893 made by him to the clerk was the tender mentioned in the deposition of John S. Barber.

" It is admitted that the County Court of Culpeper county was in session on April 19, 22, and 23, 1897."

It appears by uncontradicted testimony that counsel for Jones, the appellee, in order to avoid, if possible, the necessity of litigation, had a conversation with counsel for the appellant, Thomas, during the County Court of Culpeper, commencing April 19, 1897, at which the order was entered directing the deed to be executed to Thomas by the clerk, and informed him that the application of Thomas to become a purchaser had never been served according to law upon his client, G. Wallis Jones, and that the return of the deputy sheriff was untrue. Counsel for Thomas was surprised and indignant when he found that the deputy sheriff had failed to make a return in accordance with the facts, and wrote to him upon the subject; thereupon the deputy came to Culpeper Courthouse and stated to counsel for Thomas that he had in truth never served the application on Jones, but had merely enclosed it in an envelope and addressed it to " G. Wallace Jones, Jr., Burr Hill, Orange county, Va." Counsel for Thomas thereupon declared with much emphasis that he would sue the deputy sheriff for the damages suffered by his client, by reason of the loss of this land. Counsel for Jones then went to the clerk and told him that he was prepared to pay all taxes for which the land was delinquent, and asked for a statement, but the clerk doubted his authority, under the circumstances, to receive the money. He was then informed of the irregularities and omissions in the proceedings by which the title of Jones had been divested and put in the State, and by which Thomas had subsequently become a purchaser from the State, and then counsel for Jones suggested that, in order to save the clerk harmless, he would apply for an injunction restraining him from making the deed, and asked that he be given an opportunity to apply for an injunction before a deed was made to Thomas, which the clerk promised to do. This occurred on the 29th of April, 1897, and on the following day counsel for Jones, being compelled to go to Warrenton on professional

business, left Culpeper Courthouse at six o'clock in the morning, and returned at seven o'clock in the evening of the same day. On the 1st day of May, he was informed, greatly to his surprise, that counsel for Thomas had obtained a deed for this property on the day before; that it had been admitted to record, and spread on the deed books before nine o'clock on the morning of April 30th. Counsel being asked, " What prevented you, or what caused you to postpone applying for an injunction to restrain W. E. Coons from making the deed to John D. Thomas?" answered: That counsel for Thomas " led me to believe that there would be no further attempt to get a deed, and Mr. Coons had told me that he would not execute a deed without giving me an opportunity to apply for an injunction. I did not wish to put my client, nor Mr. Thomas, to the expense of an injunction, unnecessarily. I do not wish to be understood as stating that counsel for Thomas intentionally misled me in this matter. I only gathered it from what he said, and his manner. I remember his discussing the question of the responsibility of Mr. A. W. Pulliam, the sheriff, and his sureties for the false return by Garnett, his deputy."

This evidence is wholly uncontradicted, and is to be taken as true, and doubtless is true, in all respects.

Section 666 of the Code, by virtue of which the deed was executed, provides that section 661 shall apply to deeds made under its provisions.

Section 661 declares that " when the purchaser of any real estate so sold, his heirs, or assigns, has obtained a deed therefor, and the same has been duly admitted to record in the county or corporation in which such real estate lies, the right or title to such estate shall stand vested in the grantee in such deed as it was vested in the party assessed with the taxes or levies, on account whereof the sale was made."

It appears, therefore, that section 661 only becomes operative

after the deed has been executed and recorded. It is not the lapse of two years which cuts off the former owner from inquiry into the various steps by which his title has been divested, but that effect, according to the terms of the statute, is only produced by the execution of the deed by the clerk, and its recordation by the grantee. We must, therefore, inquire whether the deed from the clerk to Thomas was procured under such circumstances as rendered it inequitable for Thomas to avail himself of it. It is impossible to read the deposition of the counsel for Jones, without being convinced that he was lulled into false security by what occurred between himself, the counsel for Thomas, and the clerk of the court. We do not believe that any fraud was intended, and we do not impute it. We think that counsel, in their zeal to protect and promote the interests of their clients, overstepped the bounds of prudence and discretion, and that, as a result of what they did, Thomas acquired an advantage in procuring the execution of the deed under the circumstances disclosed, which it would be against good conscience to permit him to enjoy. We do not rest this upon the idea that it was competent for counsel to enter into a contract which would impose an obligation upon their clients, nor that the clerk could by contract disable himself duly to perform the functions of his office, but we do think that what occurred between counsel, naturally, indeed necessarily, induced the belief upon the part of counsel for Jones that the infirmity which existed in the claim of Thomas to the land, was recognized as insuperable, that further prosecution of it would be abandoned, and that redress would be sought in a suit for damages against the sheriff and his sureties.

A court can make no contract as to the disposition of cases upon its docket, but surely if counsel were to state to a judge that he could not attend upon a particular day, and the judge assured him that his case would not be called or tried on that

day, a judgment rendered in contravention of that assurance would operate as a surprise against which a court of equity would give relief. It is true that the clerk is not a court, and and the analogy therefore is not complete, but the principle is the same, and applies with even greater force to the case before us. "A court of equity always grants relief even against judgments at law, when it is shown that the reason why the defence was not made was founded in fraud, accident, surprise, or some adventitious circumstances beyond the control of the party." *Holland* v. *Trotter*, 22 Gratt. 141; *Little Rock Ry. Co.* v. *Wells*, 54 Am. State Reports, 216, and notes thereto.

As is said at page 236 of the case just cited: " We cannot, of course, undertake to specify all the fraudulent acts of this character which may entitle the person, against whom they were employed, to relief. Such acts may be of infinite variety. It is sufficient, as against any of them, to obtain relief from a judgment produced thereby, to show that by such act the prevailing party prevented his adversary from fairly presenting his case in the original action, whereby an unjust judgment was obtained." See, also, *McLeran* v. *McNamara*, 55 Cal. 508.

Though no representation be made to a defendant inducing him not to make his defence, yet if the plaintiff brings on the action without the knowledge of the defendant, and at a time when he knows the defendant has reason to expect the trial of it will not be had, equity will relieve against it. It appeared in one case that a justice of the peace had, in the morning, announced to a defendant that the trial of the case would not proceed because of the illness of such justice, and that but for this announcement the defendant would have been present at the hour fixed for the trial, and that the plaintiff knowing that the defendant had left the court with the belief that his cause would not be called, had afterward returned and induced the justice to proceed therewith in the absence of his adversary. " In this

case, while the plaintiff had not caused the justice of the peace to make the statements inducing the defendant to forego presenting his defence at the appointed time, he had, in effect, adopted such statements, and employed them for an unconscionable purpose, and had thus brought himself within the rule that no one shall retain an advantage at law thus secured." *Miles* v. *Jones*, 28 Mo. 87. It is immaterial that an act was done in good faith and without fraudulent intent, if by it an advantage has been obtained which it is against good conscience to enjoy, a court of equity will relieve against it.

To repeat what we have already said, we do not impute fraud in the transaction under consideration. Were it fraudulent, however, that alone would not entitle appellee to have the deed annulled, for mere fraud is not the subject of judicial inquiry and cannot, standing alone, be made the basis of relief. If, therefore, Jones, at the time the deed was executed, transferring the title from the Commonwealth to Thomas, was in such a position that a court would have compelled the clerk to execute the deed, he declining to do so of his own accord, then it follows that Jones was not injured by the conduct of Thomas through his counsel, but if, in the various steps taken to divest his title for the non-payment of taxes and place it in the Commonwealth, there was an omission to do what, under the law, was necessary to be done to accomplish that result, Jones could at any time, prior to the execution of the deed, have defeated the title of the Commonwealth, and the burden up to this point is upon those relying upon the due compliance with the several requirements of the statute law in such case provided; and, if the deed was procured by any means which a court of equity cannot sanction, if anything was said or done by Thomas or his counsel by which Jones was lulled into a false security, and thereby suffered the loss of any right or remedy, or was placed in a prejudicial position, then we have the case of a wrong accompanied by damage.

If, at the instant before the execution of the deed, Jones was in a position to defeat the proceeding against him, then he is not to be prejudiced by the fact that the deed was procured from him by methods which cannot be sanctioned by a court of equity. Turning, then, to the statement of agreed facts, let us suppose that the clerk had refused to execute the deed when demanded, and that Thomas had applied to this court for a *mandamus*, and it had appeared that section 637 had not been complied with, it cannot be doubted that such an omission would have been quite sufficient to have justified, indeed to have demanded, a denial of the writ.

It appears from the facts agreed that, in numerous particulars, the law regulating the sales of lands returned delinquent for non-payment of taxes was wholly disregarded, the most material omission perhaps being the failure to advertise as required by section 637. If the clerk had furnished copies of the list of delinquent lands, as corrected by the court, and caused them to be posted at the front door of the court-house, and printed copies thereof to be posted at five public places in the district in which the land lies, appellee might have received notice which would have enabled him to protect himself against loss.

As we have seen, appellant cannot be permitted to rely upon the deed executed to him by the clerk to cure any defects which may exist in the course of the proceeding under which he claims. The burden was upon him to show a compliance with the law, and the undisputed facts in this record are conclusive against him when he is deprived of the advantage enjoyed by virtue of the deed.

We are of opinion that the decree of the Circuit Court must be affirmed.

*Affirmed.*