## Staunton.

## DENNIS V. ROBERTSON.

### September 19, 1918.

1. TAXATION—*Sale*—*Effect of Tax Deed.*—A tax deed, according to the principles of the common law, is simply a link in the chain of the grantee's title. It does not *ipso facto* transfer the title of the owner, as in grants from the government, or in deeds between man and man. The operative character of it depends upon the regularity of the anterior proceedings. The deed is not the title itself, nor even evidence of it. Its recitals bind no one. It creates no estoppel upon the former owner. No presumption arises upon the mere production of the deed, that the facts upon which it is based had any existence. When it is shown, however, that the ministerial officers of the law have performed every duty which the law imposes upon them— every condition essential in its character—then the deed becomes conclusive evidence of title to the grantee, according to its extent and purport. This is true because the officer of the law who executes the tax deed does so in the exercise of a naked power, not coupled with an interest; and, unless made so by statute, the recitals in the deed are not even *prima facie* evidence of the existence of the conditional facts aforesaid.

2. TAXATION—*Sale*—*Conveyance of Property Previously Acquired by Commonwealth.*—The principles as set forth in syllabus 1 apply to a tax deed which undertakes to convey the title of the Commonwealth (acquired by it at a previous sale of the land for delinquent taxes), to a purchaser from the Commonwealth, as well as to such deeds undertaking to convey the title of the original owner of the land to a purchaser at a treasurer's sale of the land for delinquent taxes. Equally in both cases, the officer of the law executing the deed to the third person, who is the purchaser, executes a naked power, and any steps which the statute requires a third person to take in order to acquire the title of the Commonwealth must be strictly complied with, unless the legislature dispenses with that compliance. The State is not to be divested of its title save in the manner prescribed by the legislature.

3. TAXATION—*Tax Sale—Constitutional Law—Dispensing with Pre-liminary Steps.*—The preliminary steps to a tax sale for delinquent taxes by a treasurer, necessary to afford the landowner due process of law cannot be dispensed with even by express legislative enactment. They are necessary and indispensable to divest the former owner of his title to the land. But a different rule prevails where the Commonwealth has obtained a valid title to land and the deed is to a purchaser from it. In such case, the original owner having been divested of his title by due process of law and such title having become vested in the Commonwealth, the latter may do what it may will with its own. The former owner no longer has any title or right to the land or with respect thereto. Hence, where a tax deed conveys a title from the Commonwealth, the statute may provide that, when such a deed to a purchaser from it is once made, as prescribed by statute, its validity cannot be questioned by the former owner of the land on any grounds concerning any of the proceedings subsequent to the acquisition of the title by the Commonwealth, or on any grounds concerning the proceedings antecedent to such acquisition of title which do not go to the validity of the title acquired by the Commonwealth, except such as the statute may itself allow to be drawn in question.

4. TAXATION—*Tax Sale—Constitutional Law—Dispensing with Pre-liminary Steps.*—However, save to the extent that they may be dispensed with by statute, the proceedings which may be prescribed by statute as steps to precede the execution of such a tax deed, although they are to be taken after the acquisition of the title by the State, are nevertheless steps which are jurisdictional, and are conditions precedent to the validity of the deed. It becomes then, in every case involving the validity of a tax deed, purely a question of the construction of the statute which is relied on to give the particular force and effect which may be claimed for such a tax deed.

5. STATUTES—*Construction—Penal Statute.*—Statutes which are penal in their nature and entail forfeitures are to be strictly construed against the imposition of the penalty or the enforcement of the forfeiture.

6. TAXATION—*Deed from Commonwealth—Sections 661 and 666, Code of 1904.*—Some expressions used in the case of *Thomas v. Jones,* 94 Va. 756, 27 S. E. 813, and in other Virginia cases, did at one time give color to the view that where a tax deed is made to a purchaser from the Commonwealth under section 666 of the Code of 1904, as it originally stood or as amended, its validity could not be questioned, except upon the grounds specified in section 661 of the Code of 1904, as it originally

58

stood or as amended, since said section 666 provides that the provisions of said section 661 should apply to deeds made under authority of the former section. But it is now well settled that the true construction of said sections 666 and 661 of the Code of 1904, as they originally stood and as amended, is, that the proceedings required by said section 666 of the Code of 1904 are conditions precedent to the validity of a deed thereunder.

7. TAXATION—*Deeds—Recitals—Sections 666 and 661, Code of 1904.*— The effect of sections 666 and 661, Code of 1904, is to make the recitals in the tax deed made and recorded under section 666 have the force and effect of *prima facie* evidence of the existence of the jurisdictional steps recited, but not conclusive evidence thereof, and such jurisdictional steps, in such case, are the steps required by said section 666 to be taken subsequent to the acquisition of the title by the Commonwealth and preceding the execution of the deed under such section.

8. TAXATION—*Deed from Commonwealth—Resale Act—Conditions Precedent to Validity of Deed.*—Under the resale act (Acts 1906, page 41), section 12, the requirements of the preceding portions of such act are as much conditions precedent to the validity of the deed, as are the non-existence of the facts mentioned in said section 12 as the grounds on which the validity of the deed may be assailed.

9. TAXATION—*Tax Deed—Recitals as Evidence—Resale Act, Section 10.*—The resale act (Acts 1906, page 41), section 10, provides that the deed shall set forth all the facts appearing of record in the clerk's office in relation to the sale. The effect of that provision and of section 12 of the act is to make the recitals in the tax deed, made and recorded under such act, *prima facie,* but not conclusive evidence of the existence of the jurisdictional steps recited.

10. TAXATION—*Tax Deed—Identity of Land Sold.*—Under Code of 1904, sections 662 and 663, the identity of the land to which the Commonwealth acquired title is fixed by the description of it contained in the list returned by the treasurer at the same time that he made his report of the sale of it to the Commonwealth. To the acquisition by anyone from the Commonwealth of its title to such land, by purchase under the resale act (Acts 1906, page 41), it is essential for many obvious reasons, that the identity of the land proposed to be purchased as the same land to which the Commonwealth had previously acquired title and proposed to sell, should be made to appear by a sufficient description of it for that purpose in the proceedings required by the act for the resale, as well as in the deed to the purchaser, required by such act.

11. TAXATION—*Tax Deed—Identity of Land Sold.*—Even a sub-

stantial variance between the description in the deed and the description in the anterior proceedings (*a fortiori* an entire lack of such description in the anterior proceedings) will be fatal to the deed.

12. Taxation—*Tax Deed—Identity of Land Sold.*—If the description in the deed contains substantially the same description as is contained in the anterior proceedings, that description may be enlarged, added to (as is authorized by section 10 of said resale act [Acts 1906, page 41]), by information derived from some source other than such proceedings; but the entire absence of any description in such proceedings cannot be supplied by the description contained in the deed, for that would be to base the deed, not upon such proceedings, as the statute requires for its validity, but upon information *aliunde*, which, whether correct or not, could not empower the officer of the law executing the deed in the exercise of a naked power to make a valid execution of it so as to pass title.

13. Taxation—*Tax Deed—Identity of Land Sold—Section 10 of Resale Act.*—Section 10 of the resale act (Acts 1906, page 41) does not authorize a disregard of the rule that such a description as will identify the subject of a tax sale must be contained in the proceedings required by statute anterior to the tax deed. Such section contemplates that the clerk's list should contain at least the same description of the land as that contained in the report of the treasurer of its sale to the Commonwealth, or substantially that description, so as to identify the land, as the same as that to which the Commonwealth has title and which is proposed to be sold under the resale act (Acts 1906, page 41), such description may be enlarged by information derived from the purchaser, but its entire absence cannot be supplied by such information.

14. Taxation—*Tax Deed—Identity of Land Sold—Case at Bar.*—In the instant case the clerk's list, the treasurer's notice of sale and report of sale required by the resale act (Acts 1906, page 41) were alike fatally defective in that they contained no description of the land in question. Only the name of the original landowner and the amount of the delinquent tax and levy stated, were given in the clerk's list. And with respect to the identity of the land only that information was given by the treasurer's notice of sale and report of sale. There was nothing in such proceedings to identify the land listed and sold, as the land to which the Commonwealth had title. To establish a valid sale of the land to him by the Commonwealth it was necessary for the appellant (the purchaser) to show such identity by the record of such proceedings, through which he must derive title, and the circumstance appearing by evidence

. *in pais* that the former landowner was not assessed with any other land, is immaterial because the said resale act (Acts 1906, page 41) does not permit the appellant to derive title by facts *in pais*, but only by the proceedings of record required by the statute.

15. TAXATION—*Tax Sale—Identity of Land Sold—Extraneous Evidence.*—Extraneous testimony is always admissible to apply the description in a tax deed, as in other deeds, to the subject of it, so as to identify the land on the ground; but this is a wholly different proposition from the admission of such testimony to identify the subject of a tax deed as the same which might or should have been described in the proceedings anterior to such deed required by statute to authorize the deed, but which description was not contained in such anterior proceedings.

16. TAXATION—*Tax Sale—Who may Maintain Suit to Cancel Deed—Removal of Cloud.*—Where the Commonwealth has obtained a good title to land as against its original owner; where the latter or those claiming under him have not redeemed the land, nor any for them; and there has been a tax deed, which is void, purporting to convey the title of the Commonwealth to another; the title still remains in the Commonwealth, and the former owner or those claiming the land under him cannot maintain a suit to cancel and remove the deed as a cloud upon the title to the land. The former owner, or anyone claiming under him, should first redeem the land as if the void tax deed had never been executed.

Appeal from a decree of the Circuit Court of Bedford county. Decree for complainant. Defendant appeals.

*Reversed.*

This suit was instituted by the appellee (plaintiff in the court below), to cancel a certain tax deed and remove the same as a cloud upon the title of the appellee to a certain lot of land purported to be conveyed thereby to appellant from the Commonwealth of Virginia.

THE MATERIAL FACTS.

The material facts of the case are as follows:

The appellee, by mesne conveyances derived title to the lot in question from one W. H. Witt, the deed from the latter and wife being duly executed and recorded in June, 1907. Subsequently the lot was returned delinquent for non-payment of the tax and levy thereon for the year 1907. The lot was a town lot in Bedford City in the county of Bedford, being Lot 6 in Block 6 of what was known as the Greenwood Land Company Addition to said town and was designated as Lot 6 in Block 6 on the plat or subdivision of land made as provided by Acts of 1887-1888, chapter 486 (Code 1904, section 2510a), and acts amendatory thereof, and was owned by said W. H. Witt as of January 1, 1907, and at the time of the said conveyance from him in June of that year. The lot was assessed for taxation in 1907 in the name of its owner, W. H. Witt, under the description in the land book or tax list as "one-fourth acre Lot 6, b. 6, G. L. Co." It appears in evidence that the letters "G. L. C." was the usual abbreviation on the land books of said county to designate lots in said Greenwood Land Company Addition and plat or subdivision of land. It was returned delinquent as aforesaid under that description and subsequently it was advertised for sale, sold, bought by the Commonwealth and such sale to the Commonwealth reported by the treasurer to the court, according to law, and the description of the lot in all of these proceedings, including the list in the report of such delinquent sale under sections 662 and 663 of the Code, was substantially the same as that aforesaid under which the lot was assessed for taxation as aforesaid. The proceedings of such delinquent sale and purchase by the Commonwealth were completed in 1910 and were otherwise regular and in accordance with the requirements of law, so that the Commonwealth thereby obtained a good title to said lot, being by operation of law the same title which was vested in said W. H. Witt as of January 1, 1907, the appellee being thus divested of the title which he had derived or would otherwise have derived, by

mesne conveyances as aforesaid, from said W. H. Witt. And the title to the lot identified by the description aforesaid thus stood vested in the Commonwealth prior to the institution of this suit.

Neither the appellee, nor the said W. H. Witt, nor any one else under whom appellee claims title as aforesaid, nor any for them or for any of them, ever redeemed said land from the sale of it aforesaid to the Commonwealth.

After the expiration of over four years from the purchase of said lot by the Commonwealth as aforesaid, the same not having been redeemed by or sold to any one, certain proceedings were had under Acts 1906, chapter 52, page 41 *et seq.* for the sale of town lots within the county of Bedford.

The clerk's list in the case before us, so far as material, was as follows:

"A list of all town lots within the county of Bedford and of all lots which are a part of some plat or subdivision of land, made as provided by Acts of 1887-1888, chapter 486 and acts amendatory thereof whether within the corporate limits of the town or city or not, which have been purchased by the Commonwealth for delinquent taxes more than four years prior to January 1, 1915, and which have not been redeemed, except such lots as have been heretofore sold under this act and such as were reported for sale, but redeemed before the sale, showing the persons in whose names the lots stood at the time of the purchase by the Commonwealth, and the amount required to redeem each of the said lots, including amount of taxes due for the year in which the lot was sold, and the amount due the State and county respectively stated in separate columns.

"Name of persons charged with taxes in whose name land is sold:  Witt, W. H.

"Quantity of land charged: ..............

"Quantity of land sold: ................

"Local description of land: ..............

"1907, .12, .16.  Total, 28."

The treasurer's notice of sale, so far as material, was as follows:

"Commonwealth's sale of delinquent lots.

"The following mentioned lots within Bedford county, which have been purchased by the Commonwealth for delinquent tax, more than four years prior to January 1, 1915, and which have not been redeemed, will be offered for sale to the highest bidder, on

"Wednesday, December 1, 1915,

as per act of 1906.

"Witt, W. H. ...............................31."

The treasurer's report of sale, so far as material, was as follows:

"A list of town lots purchased by the Commonwealth *four years prior to 1914* not redeemed and were sold at auction to the highest bidder on December 1, 1915.

"Names of persons charged with taxes in whose name land was sold:

"Witt, W. H.

"Quantity of land charged: ............

"Quantity of land sold: ...............

"Total for county 1907.  State, .12; county, .16.

"Total for county, .28; .02; .30.

"Remarks: Chas. Dennis, .02."

The tax deed aforesaid was as follows:

"This deed, made this the 3rd day of July, 1916, between S. M. Bolling, clerk of the Circuit Court for Bedford county, Virginia, party of the first part, and Charles Dennis, party of the second part,

"Whereas, one-fourth acre of land described as Lot 6, Block 6, G. L. Co., was duly listed for taxation in the year 1907, in corporation district in Bedford county, Virginia, in the name of W. H. Witt, the owner thereof, and

"Whereas, such taxes on said land not being paid for said year, the same were duly reported as delinquent, and

"Whereas, on the 3rd day of January, 1910, the said land was duly sold at a delinquent tax sale by the treasurer of said county at which sale the said land was purchased by the Commonwealth of Virginia, and

"Whereas, more than four years having elapsed after such purchase by the Commonwealth aforesaid, prior to the first day of January, 1915, the clerk of said court did prepare a list of all town and city lots purchased by the Commonwealth at delinquent tax sales, more than four years prior to the first of January, 1915, and which had not been redeemed, in conformity with the act of Assembly of Virginia, approved February 23, 1906, and

"Whereas, said clerk did deliver such list to the treasurer of said county not later than the first day of September, 1915, and said treasurer did thereupon duly post copies of said list as required by said act, and did give due notice that he would sell said land at public auction, as directed by said act, unless the said land be previously redeemed, and

"Whereas, the said parcel of land so listed for taxation in the name of W. H. Witt, and so purchased by the Commonwealth aforesaid, was duly listed and posted as aforesaid, and was offered for sale at public auction by said treasurer to the highest bidder on the first day of December, 1915, as directed by said act at which *at which* sale the said Charles Dennis became the purchaser, but no description of the land or lot so sold is given in the treasurer's report of sale, at the price of two cents, which sum was by said purchaser duly paid to said treasurer, and

"Whereas, the said treasurer did duly report said sale to the Circuit Court of Bedford county, Virginia, as prescribed and directed by said act, and

"Whereas, the said court did on the first day of March, 1916, confirm said report and ordered it to be recorded and

indexed as required by said act, which order has been complied with by said clerk, and

"Whereas, four months having elapsed since said confirmation of said report, and the real estate so sold to Charles Dennis not having been redeemed as provided in said act, and the said Charles Dennis having applied to said clerk for a deed conveying said land to him,

"Now, this deed witnesseth: That in consideration of the premises and of one dollar in hand paid, and in the execution of the duty of said clerk, the said S. M. Bolling, clerk as aforesaid, doth grant with special warranty unto the said Charles Dennis, what he purchased at said sale, the report of sale not giving any description of what was sold to him. The purchaser furnished the following description as being the proper description of the lot purchased by him, to-wit: as being Lot No. 6, Block 6, map of Greenwood Addition to Bedford City, fronting fifty feet on Judd street and running back 185 feet, found in Deed Book 90, page 573.

"Witness the following signature and seal:

"(Signed)     S. M. BOLLING (Seal)

"Clerk of the Circuit Court of

"Bedford county, Virginia."

Among the facts relied on by appellant is the following: It was alleged and shown by proof in the case that the said W. H. Witt was not assessed for taxation in 1907 with any other tract or parcel of land in Bedford county than said "one-fourth acre, Lot 6, Block 6, G. L. C. Co." lot.

Upon the hearing of the cause on the merits the court below entered the decree complained of, which was, in substance, that the tax deed aforesaid was void and that the appellee was entitled to the relief sought by his suit, as aforesaid; and the appellant brings error.

*Thos. W. Miller*, for the appellant.

*Landon Lowry,* for the appellee.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court.

The assignments of error raise but two questions for our consideration, which will be hereinafter stated and decided.

As appears from the above statement this is a case in which the Commonwealth acquired a valid title to the lot in question at a sale of it for delinquent taxes at which it was bought by the Commonwealth. No question arises as between the Commonwealth and the former owner of the lot, or appellee claiming under the latter by mesne conveyances, on that subject. We set out, therefore, upon our consideration of the case, with the Commonwealth as the owner of such lot.

The first question for our consideration is:

1. Was the Commonwealth divested of its title to the lot in question by the tax deed to appellant?

There are certain general principles applicable to tax titles which are well settled but which should be borne in mind in approaching the consideration of the first question involved in the instant case.

As stated in 2 Blackwell on Tax Titles, section 845, a tax deed, "* * * according to the principles of the common law, is simply a link in the chain of the grantee's title. It does not *ipso facto* transfer the title of the owner, as in grants from the government, or in deeds between man and man. The operative character of it depends upon the regularity of the anterior proceedings. The deed is not the title itself, nor even evidence of it. Its recitals bind no one. It creates no estoppel upon the former owner. No presumption arises upon the mere production of the deed, that the facts upon which it is based had any existence. When it is shown, however, that the ministerial officers of the law have

performed every duty which the law imposes upon them—
every condition essential in its character—then the deed
becomes conclusive evidence of title to the grantee, accord-
ing to its extent and purport."

This is true because the officer of the law who executes
the tax deed does so in the exercise of a naked power, not
coupled with an interest; and, unless made so by statute,
the recitals in the deed are not even *prima facie* evidence of
the existence of the conditional facts aforesaid. *Flanagan*
v. *Grimmett,* 10 Gratt. (51 Va.) 421, 425-6; *Sulphur Mines
Co.* v. *Thompson,* 93 Va. 293, 316, 25 S. E. 232.

And such rule applies to a tax deed which undertakes to
convey the title of the Commonwealth (acquired by it at a
previous sale of the land for delinquent taxes) to a pur-
chaser from the Commonwealth, as well as to such deeds
undertaking to convey the title of the original owner of the
land to a purchaser at a treasurer's sale of the land for de-
linquent taxes. 2 Blackwell on Tax Titles, section 845;
Minor on Tax Titles, page 84. Equally in both cases, the
officer of the law executing the deed to the third person,
who is the purchaser, executes a naked power, and, as stated
by Mr. Minor on page 84 of his work last cited "* * * any
steps which the statute requires a third person to take in
order to acquire the title of the Commonwealth must be
strictly complied with, unless the legislature dispenses with
that compliance. The State is not to be divested of its title
save in the manner prescribed by the legislature."

It is very true, as correctly pointed out elsewhere in the
valuable work last quoted, that touching the power of the
legislature to dispense with certain anterior proceedings as
prerequisites to a valid tax deed, an entirely different case
presents itself when it is one where the Commonwealth has
obtained a valid title and the deed is to a purchaser from it,
from that of a case of a deed to a purchaser at a delinquent
tax sale by a treasurer. In the latter case there are certain

constitutional limitations on the power of the legislature which protect the rights of the individual land owner. These limitations concern the preliminary steps to a tax sale necessary to afford the land owner "due process of law" and cannot be dispensed with even by express legislative enactment. They are necessary and indispensable to divest the former owner of his title to the land and are also referred to by Minor on Tax Titles, pages 127-155. In the former case,. the original owner having been divested of his title by due-process of law and such title having become vested in the Commonwealth, the latter may do what it may will with its. own. In such case the former owner no longer has any title or right to the land or with respect thereto. The circumstance that the Commonwealth may by statute · give the former owner the right (so called) of redeeming the land by performing certain stipulated acts, so long as the title remains in the State; or may require that any purchaser from the State shall give a certain notice to the original owner to redeem before such purchaser can obtain a deed, or that any other right (*sic*) pertaining to the land is thus given, does not alter the situation. These are all matters of grace and of privilege and are not in truth matters of right in the former owner. At most they are *rights* if asserted by the former owner in the way and within the time prescribed by statute. The State may provide by statute that at a certain stage in the proceedings subsequent to the acquisition of the title by it, such quasi-rights no longer exist. Since the State need not have granted such quasi-rights at all, it may grant them in a limited way or for a limited time, and, so far as the original owner is concerned, he is without ground of complaint if these are denied to him, by or under legislative enactment, at any time after the State has acquired the title. Hence, where a tax deed conveys a title from the Commonwealth, the statute may provide that, when such a deed to a purchaser from it is

once made, as prescribed by statute, its validity cannot be questioned by the former owner of the land on any grounds concerning any of the proceedings subsequent to the acquisition of the title by the Commonwealth, or on any grounds concerning the proceedings antecedent to such acquisition of title which do not go to the validity of the title acquired by the Commonwealth, except such as the statute may itself allow to be drawn in question. *Idem,* pages 84, 147, 151, 155; *Thomas* v. *Jones,* 94 Va. 756, 27 S. E. 813; *Lacks* v. *Latham,* 116 Va. 424, 82 S. E. 75.

But all this concerns merely *the power* of the State to control the subject of the effect of a tax deed where it conveys a title from and which has been previously vested in the State. The question still remains to what extent such power has been exercised, when we come to construe any particular statute on the subject. Save to the extent that they may be dispensed with by statute, the proceedings which may be prescribed by statute as steps to precede the execution of such a tax deed, although they are to be taken after the acquisition of the title by the State, are nevertheless steps which are jurisdictional, and are conditions precedent to the validity of the deed. It becomes then, in every case involving the validity of a tax deed, purely a question of the construction of the statute which is relied on to give the particular force and effect which may be claimed for such a tax deed.

Some expressions used in the case of *Thomas* v. *Jones, supra,* 94 Va. 756, 27 S. E. 813, and in other Virginia cases, did at one time give color to the view that where a tax deed is made to a purchaser from the Commonwealth under section 666 of the Code, as it originally stood or as amended, its validity could not be questioned, except upon the grounds specified in section 661 of the Code, as it originally stood or as amended, since said section 666 provides that the provisions of said section 661 should apply to deeds

made under authority of the former section. And such construction was indeed placed upon the holding in said case of *Thomas* v. *Jones*, by Mr. Minor in his valuable work above cited. See Minor on Tax Titles, page 147. But it is now well settled that the true construction of said sections 666 and 661 of the Code, as they originally stood and as amended, is, that the proceedings required by said section 666 of the Code are conditions precedent to the validity of a deed thereunder. This holding has been reached by applying the principle that statutes which are penal in their nature and entail forfeitures are to be strictly construed against the imposition of the penalty or the enforcement of the forfeiture. That so construing said section 661, and the language therein, "when the purchaser of any real estate * * * sold in pursuance of section 666 * * * has obtained a deed therefor * * * the right or title to such real estate shall stand vested in the grantee in such deed as it was vested in the party assessed with the taxes or levies on account whereof the sale was made at the commencement of the year for which the taxes or levies were assessed, or any person claiming under such party, subject to be defeated only by proof * * *" etc. (setting forth certain facts which may be received in evidence to invalidate the deed), its true meaning is that the real estate has not been sold "in pursuance of section 666" unless the requirements of the latter section have been complied with; and, hence, such requirements are as much conditions precedent upon which the validity of a deed thereunder depends as is the non-existence of the facts mentioned in section 661 of the Code as grounds on which the validity of the deed may be assailed. *Zimmerman* v. *Dey*, 121 Va. 709, 93 S. E. 597, and authorities therein cited.

In the last cited case there was a careful consideration of many decisions of this court touching the subject of the paragraph next above, which, therefore, need not be here

again reviewed. And, as noted in the opinion of this court
delivered by Judge Kelly in the last cited case, the extent
to which the case of *Thomas* v. *Jones, supra,* 94 Va. 756,
27 S. E. 813, carried the curative force of section 661 of
the Code, has subsequently been greatly qualified, if not en-
tirely overruled.

There is a provision in said section 666 that the deed
"* * * shall set forth all the circumstances appearing in
the clerk's office in relation to the sale," and it is settled
that the effect of said sections 666 and 661 is to make the
recitals in the tax deed made and recorded under section
666 have the force and effect of *prima facie* evidence of the
existence of the jurisdictional steps recited, but not conclu-
sive evidence thereof. *Thomas* v. *Jones,* 98 Va. 323, 36 S.
E. 382; *Zimmerman* v. *Dey, supra,* and authorities therein
cited. And such jurisdictional steps, in such case, are the
steps required by said section 666 to be taken subsequent
to the acquisition of the title by the Commonwealth and pre-
ceding the execution of the deed under such section. *Lacks*
v. *Latham, supra,* 116 Va., at page 427, 82 S. E. 75.

The instant case involves a tax deed made under what is
commonly designated the resale act (Acts 1906, page 41)
approved February 23, 1906. This act is complete in itself
and does not refer to said section 661 of the Code; but it
contains in section 12 thereof practically the same provis-
ions as the original section 661 of the Code before the latter
was amended. Such section 12 of such act so far as ma-
terial, is as follows:

"12. When the purchaser of any real estate *so sold*
* * * has obtained a deed therefor * * * the right or
title to such real estate shall stand vested in the grantee in
such deed, as it was vested in the party assessed with the
taxes and levies thereon at the commencement of the year
for which the taxes or levies were assessed for which it was
sold, or any person claiming under such party, subject to be

defeated only by proof," \* \* \* etc. (setting forth certain facts which alone may be received in evidence to invalidate the deed, which are the same as set forth in section 661 of the Code as it was originally enacted and before amendments thereto added certain other grounds on which the validity of the deeds referred to in the latter might be assailed). (Italics supplied.)

We are of opinion that the language "so sold" in the latter act, means "sold in pursuance" of such act. Hence the same construction which this court has given to section 661 of the Code aforesaid, must be given to section 12 of the act now under consideration; and that is that the true construction of such section is that the requirements of the preceding portions of such act are as much conditions precedent to the validity of the deed, as are the non-existence of the facts mentioned in said section 12 as the grounds on which the validity of the deed may be assailed.

There is nothing in the case of *Roller* v. *Cooley*, 119 Va. 209, 89 S. E. 136, which is in conflict with the conclusion above reached. The latter case involved said resale act; and it is true that among the recitals in the tax deed made under such act was a recital that the Commonwealth obtained its title to the lot in question under a certain previous sale of it for delinquent taxes under which the Commonwealth did not in fact obtain its title. That title was obtained under another delinquent tax sale. Such recital therefore was erroneous. But that error was held to be immaterial because it concerned a proceeding which was prior to and was not embraced in the proceedings under said resale act; that the proceedings required by such act to be set forth in a deed under it are only those transpiring after the Commonwealth had obtained its title and which are mentioned in the act.

In the case last mentioned there was no question but that the proceedings under the resale act touching the steps

required by such statute subsequent to the acquisition of its title by the Commonwealth and under which the tax deed under such statute was made, were all regular and in accordance with the requirements of the statute (consisting of a proper clerk's list, treasurer's notice of sale, sale, and report of sale, properly identifying the land, etc.) ; and hence it was held that the bar of section 12 of the statute applied and that the tax deed to the purchaser thereunder from the Commonwealth could be defeated only by proof of the existence of the facts mentioned in such section as grounds on which the validity of the deed could be assailed, viz : by proof that the taxes or levies for which the lot was sold to the Commonwealth were not properly chargeable thereon, or that the taxes and levies chargeable on such real estate had been paid.

There is a provision in section 10 of said act that the deed "* * * shall set forth all the facts appearing of record in the clerk's office in relation to the sale," similar to the provision on that subject in section 666 of the Code, and the effect of that provision and of section 12 aforesaid is to make the recitals in the tax deed, made and recorded under such act, *prima facie,* but not conclusive evidence of the existence of the jurisdictional steps recited.

Now the jurisdictional steps required by the provisions of the act under consideration, other than section 12 thereof, are, so far as material, in substance as follows:

By section 1 the clerk of the circuit court of each county is required annually to "* * * prepare a list of all town lots * * * within his county * * * and of all lots which are a part of some plat or subdivision of land, made as provided by acts of eighteen hundred and eighty-seven and eighteen hundred and eighty-eight, chapter four hundred and eighty-six and acts amendatory thereof, whether within the corporate limits of a town * * * or not, which have been purchased by the Commonwealth for delinquent

60

taxes for more than four years prior to January first of the year in which such list is made, and which have not been redeemed; and said list shall show the person in whose name the lot stood at the time of the purchase by the Commonwealth, and the amount required to redeem each of said lots, including the amount of taxes due for the year in which such lot is sold, and the amount due the State, county and corporation, respectively, shall be stated in separate columns * * *."

Section 2 provides that said list shall be delivered by the clerk to the treasurer not later than a certain date each year: that the treasurer of the county shall within a certain time thereafter post printed copies of such list at the front door of the court house and at least five public places in each magisterial district of the county; and that to each copy "the treasurer shall attach a notice that *the real estate therein mentioned,* or so much of each parcel thereof as may be necessary to satisfy the amount required to redeem the same * * * will be sold * * *" at a certain time and place to be set forth in the notice "unless the amount required to redeem said lots * * * shall have been previously paid to such treasurer." (Italics supplied.)

Section 4 provides that—"The treasurer on receiving from such purchaser the amount of his purchase, shall give him a receipt for the same in which he shall set forth *with reasonable certainty a description of the lot sold,* in whose name it was sold, the price paid and the amount required to redeem the said lot as aforesaid * * *." (Italics supplied.) It will be noted that the only source mentioned in the statute from which the treasurer could obtain this *data* is the clerk's list aforesaid.

Sections 5 and 6 provide for a report of the treasurer of his sales, for confirmation of same by the court, after correcting them "when there is error," and for recordation thereof.

The further material provisions of the resale act are as follows:

Section 10 provides that after and within a certain time, "if the real estate *so sold* has not been redeemed   *  ·  *   * the purchaser of any such real estate, his heirs or assigns, shall obtain from the clerk of the circuit court of the county  *   *   * whose officer has sold such real estate, a deed conveying the same, in which shall be set forth all the facts appearing of record in the clerk's office in relation to the sale. *The deed shall describe the lot with reference to the plat of subdivision of which it forms a part and according to which it was sold, or in such other way as will definitely describe it,* and such information as may be necessary for such description, *not appearing in his office, shall be furnished to the clerk by the purchaser* at his own cost."

Section 11 provides that if a deed is not made within the time prescribed by section 10 the former owner, etc., may thereafter and before such deed is made redeem the lot as provided for in such section.

Section 14 provides that if there is an excess of purchase money from the sale of a lot above the amount required to redeem same as in the act provided the former owner of the lot shall be entitled thereto if called for within five years after confirmation of report of sale.

The identity of the lot to which the Commonwealth acquired title in the instant case was fixed by the description of it contained in the list returned by the treasurer at the same time that he made his report of the sale of it to the Commonwealth. Sections 662 and 663 of the Code of Virginia (Pollard's Code, 1904) ; *Minor on Tax Titles,* page 148.

To the acquisition by anyone from the Commonwealth of its title to such lot, by purchase under said resale act, it is essential, for many obvious reasons, that the identity of the lot proposed to be purchased as the same lot to which the

Commonwealth had previously acquired title and proposed to sell, should be made to appear by a sufficient description of it for that purpose in the proceedings required by the act for the resale, as well as in the deed to the purchaser, required by such act.

That such is the requirement of said act is apparent from a reading of it as a whole. Indeed the requirement of the list of lots subject to sale under the act, by necessary implication, is a requirement of a valid list for that purpose. No list would be valid for such purpose unless it contained the sufficient description aforesaid, for that is the chief purpose and object of such a list. That section 1 of the act requires the list to show certain things expressly mentioned, but does not mention such description among them, does not controvert that conclusion, for the obvious reason that the legal import and meaning of the very word "list" aforesaid when used in its context in the statute, rendered it unnecessary for the statute to expressly require that it should contain a description of the lot or lots contained in the list. Without some description of them, indeed, it could not be a list of such lot or lots. Moreover, the language of sections 2, 4 and 10, italicized in the above quotations therefrom, make it plain, as aforesaid, that the act requires the lists to contain a description of the lot or lots to be sold and conveyed.

That such a description as will identify the subject of the tax sale is absolutely essential to be contained in the proceedings required by statute anterior to the tax deed, in order that the deed may be valid to pass the title from the former owner to a purchaser at a delinquent tax sale by a treasurer, is well settled. Such anterior proceedings, in such case, and the tax deed, are regarded as an entirety, and the description of the subject of the tax sale must be consistent throughout. The power of sale, and the power of conveyance depend upon such identification of the subject

matter thereof.  Even a substantial variance between the
description in the deed and the description in the anterior
proceedings (*a fortiori* an entire lack of such description
in the anterior proceedings), will be fatal to the deed.  If
the description in the deed contains substantially the same
description as is contained in the anterior proceedings, that
description may be enlarged, added to (as is authorized by
section 10 of said resale act), by information derived from
some source other than such proceedings; but the entire
absence of any description in such proceedings cannot be
supplied by the description contained in the deed, for that
would be to base the deed, not upon such proceedings, as
the statute requires for its validity, but upon information
*aliunde*, which, whether correct or not, could not empower
the officer of the law executing the deed in the exercise of
a naked power to make a valid execution of it so as to pass
title.   2 Blackwell on Tax Titles, sections 874, 875; Minor
on Tax Titles, pages 120-1; *Boon* v. *Simmons*, 88 Va. 259,
266, 13 S. E. 439.  The same rule must necessarily obtain
with respect to a tax deed passing title from the Common-
wealth under said resale act, as well as under section 666
of the Code, since such statutes themselves make the tax
deed depend for its validity upon the requirements of those
statutes being complied with, as aforesaid.

And while section 10 of the said resale act, if read alone,
might be construed to authorize the disregard of the rule
next above adverted to, when read in the light of the other
provisions of such statute having for their object the iden-
tification of the lot conveyed, and in the light of the author-
ities disclosing the legal principle involved, it is plain that
such section does not authorize the disregard of such rule.
We think that such section contemplates that the clerk's
list should contain at least the same description of the lot as
that contained in the report of the treasurer of its sale to
the Commonwealth, or substantially that description, so as

to identify the lot, as the same as that to which the Commonwealth has title and which is proposed to be sold under the resale act, that such description may be enlarged as aforesaid, by information derived from the purchaser, but its entire absence cannot be supplied by such information, as aforesaid.

In the instant case the clerk's list, the treasurer's notice of sale and report of sale required by said resale act were alike fatally defective in that they contained no description of the lot in question. Only the name of the original land owner and the amount of the delinquent tax and levy stated, were given in the clerk's list. And with respect to the identity of the land only that information was given by the treasurer's notice of sale and report of sale. There was nothing in such proceedings to identify the lot listed and sold, as the lot to which the Commonwealth had title, as aforesaid. To establish a valid sale of the lot to him by the Commonwealth it was necessary for the appellant to show such identity by the record of such proceedings, through which he must derive title.

The circumstance appearing by evidence *in pais* that the former land owner was not assessed for 1907 with any other land as set forth in the statement of facts above is immaterial because the said resale act does not permit the appellant to derive title by facts *in pais*, but only by the proceedings of record aforesaid required by the statute. See *Nowlin v. Burwell*, 28 Gratt. (69 Va.) 883-889.

It is true that under a well-settled rule, extraneous testimony is always admissible to apply the description in a tax deed, as in other deeds, to the subject of it, so as to identify the land on the ground; but this is a wholly different proposition from the admission of such testimony to identify the subject of a tax deed as the same which might or should have been described in the proceedings anterior to such deed required by statute to authorize the deed, but

which description was not contained in such anterior proceedings. For the reasons above stated such omission of description cannot be supplied by including in the deed a description which is extraneous to the record.

Therefore the tax deed to appellant involved in the instant case, was void and passed no title from the Commonwealth. It left the title to the lot in question still vested in the Commonwealth. In the holding of the decree complained of to this effect there was no error. But,

This brings us to the consideration of the remaining question raised by the assignments of error for our consideration, and that is—

2. Could the appellee, who had not, nor had anyone for him, before he instituted this suit, redeemed the lot in question from its sale to the Commonwealth, maintain this suit to cancel and remove the deed aforesaid as a cloud upon his title?

It is well settled that where the Commonwealth has obtained a good title to land as against its original owner; where the latter or those claiming under him have not redeemed the land, nor any for them; and there has been a tax deed, which is void, purporting to convey the title of the Commonwealth to another; the title still remains in the Commonwealth, and the former owner or those claiming the land under him cannot maintain a suit to cancel and remove the deed as a cloud upon the title to the land. *Roller* v. *Cooley*, 119 Va. 209, 89 S. E. 136; *Mathews* v. *Glenn*, 100 Va. 352, 41 S. E. 735; *Parsons* v. *Newman*, 99 Va. 298, 38 S. E. 186; *Baker* v. *Buckner*, 99 Va. 368, 38 S. E. 280.

The certain quasi-rights given to the former owner of the land and to appellee claiming under him by said resale act, notwithstanding the ownership thereof by the Commonwealth, are rights of the same nature as those enjoyed by the parties occupying the same relationship to the land in the cases last cited, under similar statute law; and yet they

were held to have no right to maintain a suit such as that before us unless and until they or some one for them, had divested the Commonwealth of its title and vested it in themselves by redemption of the land as provided for by statute.

Such is the instant case and the position of appellee at the time that he instituted this suit. Hence the question under consideration must be answered in the negative.

The suit of appellee, therefore, was prematurely brought. He should have first redeemed the lot in question as the statute provides, by proceedings to that end, as if the tax deed to appellant had never been executed.

The decree complained of must therefore be set aside and annulled, without prejudice, however, to the appellee to redeem the lot in question according to law and to thereafter institute his suit against the appellant should he be so advised, to cancel and remove the deed aforesaid as a cloud upon the title to the lot, unless the need of such suit be obviated by proper voluntary action on the part of appellant, before such suit is instituted by quit-claim deed or otherwise.

*Reversed.*